JUAN MARTINEZ et al., Appellants, v. SUPREME
LODGE KNIGHTS OF HONOR, Defendant;
LOUISA PROBST, Respondent.

**St. Louis Court of Appeals, November 28, 1899.**

1. **Fraternal Beneficiary Association:** UNDER TWO CHARTERS: BEN-
EFICIARY CERTIFICATE CONSTRUED.   The Supreme Lodge Knights
of Honor incorporated first in the state of Kentucky afterwards
in Missouri, issued to Raffael Martinez a benefit  certificate for
$1,000, dated July 26, 1888, expressed to be payable to his cousin,
Louisa Probst, not a dependent.  The deceased member left two
brothers, appellants, living in a Province of Spain.  Under the Mis-
souri laws and testimony, neither the brothers, nor Miss Probst
would be entitled to receive any benefits.

2. ———: ———: CERTIFICATE ISSUED UNDER KENTUCKY CHAR-
TER.  The benefit certificate showed on its face that the order
was originally organized in Kentucky, January 1, 1874; that the
local lodge in New Orleans to which deceased belonged, was organ-
ized August 15, 1881, impressed with its seal and attested by its
chief officers; that the beneficiary therein named under the Ken-
tucky laws, was entitled to receive benefits; that there was no refer-
ence in the certificate to the class of persons defined as beneficiaries
by the Missouri statutes:  Held, that the certificate was made with
reference to the Kentucky charter, and the beneficiary, Miss Probst,
entitled to receive the funds on deposit in the court.

3. ———: ———: A CORPORATION UNDER TWO CHARTERS.  A corpor-
ation may acquire franchises in different states at different times
and the latter one will not *ipso facto* dissolve the former, and
both corporations may do business in each state at the same time.

4. ———: ———: PUBLIC POLICY SUBSERVED.  As the order con-
tracted through the instrumentality of the Kentucky charter, the
beneficiary named in the certificate would be entitled to receive the
fund secured thereby, unless public policy should intervene and
direct otherwise, which it does not, since the Acts of 1897 specify
that the affianced wife, is a lawful beneficiary.

Appeal from the St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft*, Judge.

AFFIRMED.

*O'Neill Ryan* for appellants.

(1) Miss Probst, not having been related to, or dependent on Martinez, and not having been a member of his family, can not recover this fund. That she is designated in the certificate as the beneficiary will not avail. Bacon on Ben. Soc., secs. 37, 239, 244; Ben. Assn. v. Bunch, 109 Mo. 578; Keener v. Lodge, 38 Mo. App. 543; Lodge v. Nairu, 60 Mich. 44; Alexander v. Parker, 142 Ill. 363; Palmer v. Welch, 132 Ill. 141; Rindge v. N. E. M. A. S., 146 Mass. 286. (2) The designation having failed, because it was illegal, the fund goes to the others (here only the plaintiffs) who are entitled thereto under the laws of the order. Bacon on Ben. Soc., sec. 243a; Niblack on Ben. Soc., p. 340. (3) The word "family" may mean more than those persons who constitute the domestic circle of the home. Carmichael v. The Association, 51 Mich. 496; White v. Biggs, 22 Eng. Ch. 583; Cruwys v. Colman, 9 Ves. 320; 2 Century Dictionary, p. 2133, Family. (4) There was a complete failure of proof to sustain the allegations in the interplea.

*J. E. McKeighan* and *F. H. Bacon* for respondent.

(1) Louisa Probst, being mentioned in the benefit certificate, is *prima facie* entitled to the fund and the burden is on plaintiffs to show, not only that she is not entitled to take, but also that they are within the classes of beneficiaries specified in the laws of the order and the statutes of this state. Nye v. Lodge, 9 Ind. App. 131; Ballou v. Giles, 50 Wis. 614.

Failing to show title in themselves the fund must be awarded the respondent. Palmer v. Welch, 132 Ill. 141. (2) Admitting, that the rights of the parties are to be determined by the laws of the state of Missouri, and that the Knights of Honor is a fraternal beneficial corporation under our laws, plaintiffs are not within the classes named in the charter, which is the statute, nor in the articles of association. Ballou v. Giles, 50 Wis. 614; Hysinger v. Lodge, 42 Mo. App. 634; Ben. Ass'n v. Bunch, 109 Mo. 578. (3) Appellants are clearly neither the widow, nor the orphans, nor the dependents, of the deceased member, nor were they members of the family of the member at the time of his death. Hofman v. Lodge, 73 Mo. App. 55; Lister v. Lister, 73 Mo. App. 99; Elsey v. Mut. Ass'n, 142 Mass. 224; Smith v. Society, 46 N. E. 626. (4) Under the law and the facts intervenor, Louisa Probst, was entitled to the fund, because she was designated by the member to receive the money and comes within the limitations of the Kentucky charter. (a) An association can have two charters granted by different states, and exercise the powers conferred by either. Morawitz on Corp., sec. 977. (b) Under the Kentucky charter benefits can be paid to anybody, because the language is that benefits shall be paid "as he may direct." Hysinger v. Lodge, 42 Mo. App. 627; Gentry v. Lodge, 32 Fed. Rep. 718. (c) Under the laws of this state a woman engaged to be married to a man has an insurable interest in his life. Chisholm v. Ins. Co., 52 Mo. 213. Our present statute authorizes such associations to issue certificates payable to the fiancee of a member. Laws of 1897, p. 132. (d) The intention of the member was that Louisa Probst should have this money, and a court of equity will endeavor to carry out the will of such member, unless against public policy. There is nothing in the public policy of this state which prevents the payment of the benefit to the fiancee of a man.

BLAND, J.—In March, 1876, the Supreme Lodge Knights of Honor was incorporated by an act of the legislature of Kentucky as a fraternal association with insurance features, whereby it was empowered to create a fund from which upon the death of a member, in the words of the act, "a sum not exceeding $5,000 shall be paid to his family, or as he may direct." In the exercise of the charter powers thus acquired the order on August 15, 1881, established at New Orleans, Louisiana, a subordinate lodge, known as Excelsior Lodge No. 2526. In June, 1884, the Supreme Lodge Knights of Honor took out a second charter, for the association of which it was composed, in conformity with the laws of Missouri, and though still retaining its Kentucky incorporation henceforth removed the offices of the company to St. Louis and transacted its general business from that point. Raffael Martinez, a citizen of New Orleans, Louisiana, became a member of the said lodge located there, and as such received a benefit certificate on his life for $1,000, expressed to be payable to his cousin, Louisa Probst. It was delivered to him through the lodge of which he was a member, on the twenty-sixth of July, 1888. He died in March, 1895, in good standing in the order, leaving no kindred except two brothers living in the province of Asturias in the kingdom of Spain, to whom he bequeathed his estate, after the payment of some legacies to his god-children. These two brothers of the deceased sued the order for the amount of the benefit certificate. Louisa Probst also brought suit as the beneficiary named in the certificate, and as the affianced wife of the member. Thereupon the order prayed for an interpleading between the rival claimants to the fund, and to be allowed to pay the fund into court for disposition by it. This petition was sustained, and upon the hearing of the issues between the interpleaders the court directed the fund to be paid to Louisa

Probst, and Juan and Francisco Martinez (the brothers of the deceased member) appealed to this court.

If the contract between the fraternal order and its deceased member was one made and accepted in execution of the powers granted to the order under its Missouri charter, neither the two brothers—living abroad—nor Miss Probst, the beneficiary named, were within the class of persons entitled to be named as beneficiaries.   For the Missouri statute defining the persons to receive such benefits (R. S. 1889, sec. 2823, now repealed, Acts 1897, page 132) included only the family of the deceased, his widow or orphan, or other kindred dependent, and there is no substantial evidence that either of the claimants occupied any one of such relations. Hofman v. Grand Lodge, 73 Mo. App. 55; Lister v. Lister, 73 Mo. App. 99; Grand Lodge v. Dister, 77 Mo. App. 608.   On the other hand, if the contract in question was entered into by the parties under the Kentucky charter, it is clear that Louisa Probst is entitled to the fund, she being the appointee of the member in the certificate, and it being competent for him to designate a beneficiary under that charter without restriction, unless the enforcement of her designation as a beneficiary would contravene the public policy of Missouri.   The first question, therefore is, under which charter did the order and its member contract?   The undisputed evidence is that the decedent joined the order by becoming a member of a local lodge established by it in New Orleans, by virtue of the power and authority derived from the incorporation in Kentucky, for when the lodge which decedent joined was organized the order had not then acquired its Missouri charter.   This subordinate lodge was created to carry on the business of the order in Louisiana, and to that end to enable the residents of that state to enter into contracts which should obligate the order to the extent of the powers granted to it by the special act of the Kentucky legislature which gave the order corporate life.   In the case in hand the member lived in the state of Louisiana,

and in the city where the lodge which he joined was located. The benefit certificate issued upon his life was also payable to a resident of the same city and state, and was delivered through the local lodge situated there, and though the certificate in question emanated from the Missouri office of the company, it expressly recited on its face that the corporation itself was organized of date "January 1, 1874" (long prior to the obtention of the Missouri charter), and recited also the date "August 15, 1881," of the organization of the local lodge to which it was sent. The certificate was further impressed with the seal of said local office and bore the test of its chief officers to the signature of the member in token of his acceptance of the conditions expressed for its payment, which conditions were, to wit, the truth of his statements to the medical examiner, compliance with the laws of the order, and that he should be in good standing therein at the time of his death. The certificate nowhere and in no manner conditioned the payment upon the designation of a beneficiary of that class to which the member would have been restricted if the order was acting under its Missouri charter. On the contrary, it specified a beneficiary who was *prima facie* incompetent to take if the contract was made with it only as a Missouri corporation. In view of these internal evidences of such an intention afforded by the terms of the certificate, as well as the inferences arising from the situation of the parties, it must be held that it was the purpose of the Supreme Lodge Knights of Honor to contract with its member in accordance with that charter referred to by mention in the certificate, and which was broad enough to authorize and validate the engagement, rather than in accordance with a second incorporation which could not support the contract between the parties. A further and conclusive evidence that such was the intention of the order is derived from the fact that it received payment of all dues on the benefit certificate thus issued from its date until the death, several years thereafter, of the member, thus inducing the

member to carry out the contract upon the assumption of its entire validity.

The next question is, did the law permit the Supreme Lodge Knights of Honor, under the circumstances above recited, to bind itself as a Kentucky corporation? Unquestionably it had such power, unless there was something, in the mere fact of the obtention of a Missouri charter, to prevent its exercise. That the order refused to abandon its Kentucky charter when it re-incorporated in Missouri, appears from the positive testimony of two witnesses, as well as the statement in the articles of association on this point, when an application was made for a Missouri charter, that the order was an existing corporation under the laws of Kentucky, and "acting as such corporation, now desire to become further incorporated by the same name and for the same purposes, by and under the laws and authority of the state of Missouri." It is a well-settled law, that a corporation, which in its essential sense is a mere association of persons, may acquire a franchise as such in different states and at different times, and that the organization of a later corporate entity in one state does not *per se* involve the loss of a prior corporate being granted by another state, and that the corporation may act in one state under one charter and in another state which it desires to enter for business, under a mere license, or under articles of full incorporation, the latter method being often adopted by a foreign corporation in order to acquire specific power to act as a domestic corporation in a particular state, independent of the principle of comity which it would otherwise be compelled to invoke. Morawitz on Corporations, sections 991 *et seq.* Tourville v. Railway, 148 Mo. loc. cit. 622. So in the case under review the Supreme Lodge Knights of Honor in its business transactions with the citizens of Missouri can only act under the limitations prescribed by its charter taken out in that state; and likewise in Kentucky the same order can only carry on business

under the authority of the corporation derived from that state; but in all other states the order may contract either under its Kentucky or its Missouri charter as it sees fit, and when the engagement so entered into does not specify the source of its authority, the capacity in which the order acted may be inferred from the intent of the parties as gathered from the facts and circumstances surrounding them and the terms of the contract in which they were engaged. This being so, it is wholly immaterial that the order had located its business office in Missouri and had a charter in that state governing its dealings within its borders at the time of the issuance of the benefit certificate to Raffael Martinez in the city of New Orleans, Louisiana, when it is seen that the contract evidenced by the certificate and the circumstances of the membership of the decedent point unmistakably to the exercise by the order of its power to contract as a Kentucky corporation. We think it reasonably clear, therefore, that the Supreme Lodge Knights of Honor contracted with its member in the matter under review through the instrumentality of the Kentucky incorporation under which the lodge joined by the member, was established, and that the beneficiary named in the benefit certificate issued in furtherance of such contract is entitled to receive the fund paid into court, unless such a distribution would violate some rule of public policy. The surest evidence of the public policy of a government is found in its legislative enactments. The Acts of 1897, page 132 regulating who may be beneficiaries in certificates issued by orders like the present, embrace within its classification a person engaged to be married to a member. There is ample evidence in this record that Miss Probst was the affianced wife of the deceased member for some years prior to his death. As such the payment of the fund to her does not offend any rule of public policy, and effectuates the clear intent cherished by the member when he designated her as the recipient of this provision. Our conclu-

sion is that there was no error in the decree of the lower court, and it is affirmed.

Judge *Bland* concurs; Judge *Biggs* dissents.